In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2985

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NICHOLAS O. NELSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-CR-155 — **William C. Griesbach**, *Judge*.

ARGUED APRIL 14, 2020 — DECIDED MAY 11, 2020

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE,
*Circuit Judges*.

WOOD, *Chief Judge*. In the course of a police check of a sus-
picious vehicle, Nicholas Nelson was caught with a handgun.
Because he previously had been convicted of a felony, it was
a crime for him to possess such a weapon. He eventually was
charged with violating 18 U.S.C. § 922(g), and he was con-
victed after a jury trial. He raises two arguments on appeal,
both directed to his conviction: first, he complains about some

evidentiary rulings of the district court, and second, he argues that a misstatement by the prosecutor during closing argument was so prejudicial that he should receive a new trial. The applicable standard of review dooms both points, and so we affirm his conviction.

**I**

**A**

On February 26, 2017, police were dispatched after business hours to check on a suspicious vehicle in an office parking lot. Officer Seeley Moe, of the Village of Fox Crossing, Wisconsin, responded to the call. He saw two cars in the lot, a Hyundai Sonata and a Mercedes with a flat tire. Only the Hyundai was occupied, and so he approached it. As he did so, a man got out of the car. Responding to Officer Moe's inquiry, the man said that his name was Adam Nelson. Officer Moe checked Department of Transportation (DOT) records for that name and quickly realized that the man had lied to him. The man backtracked quickly, explaining that he had lied about his name because he had a suspended driver's license, and that he was really Nicholas Nelson. Knowing that much, Officer Moe took Nelson to his squad car to write up a municipal citation for obstructing an officer.

Meanwhile, Officer Corey Haag was heading to the parking lot to back up Officer Moe. On his way, Officer Haag radioed a request to neighboring Grand Chute for an officer with a trained dog. Upon arriving at the lot, Officer Haag spoke with the Hyundai's two passengers, both women. The one in the back seat identified herself as Ashley Baring and showed a Wisconsin state I.D. card. The other passenger, who

was in the front, initially identified herself as "Brooklyn Sullivan." That also turned out to be a lie, as another quick check of the DOT database revealed. Confronted with the mismatch, the passenger admitted that her name was Alexis Sullivan.

While he was speaking with the women, Officer Haag noticed the smell of alcohol and marijuana emanating from the car, and he saw what appeared to be small bits of marijuana on Sullivan's shirt. Around that time, Officer Adam Miller arrived with his trained dog, Apollo. Officer Haag asked Baring and Sullivan to get out of the car, and they did so. Officer Miller walked Apollo around the car, and the dog alerted on the back driver's side. Based on the alert, Officers Miller and Moe searched the car. They found some marijuana, and critically for this case, they found a handgun underneath a sweatshirt, within reach of the driver.

Nelson ultimately admitted that he was a convicted felon and was arrested. During the course of the ensuing investigation, the police obtained a search warrant to get a DNA sample from Nelson. The sample was sent to the Wisconsin State Crime Laboratory, where it was assayed by DNA Analyst Benjamin DeStaercke. DeStaercke reported a match between Nelson's DNA profile and some DNA found on the trigger of the gun. The chance that such a match could occur, he said, was less than one in seven trillion—a level that allowed him confidently to identify Nelson as the source of the material on the gun.

B

At trial, the government introduced, over Nelson's objection, the evidence pointing to drug-dealing: the smell of marijuana coming from the Hyundai, the specks of marijuana on

Sullivan's shirt, the dog's alert, and the recovery of marijuana from the car. Nelson argued that this evidence was both irrelevant, for purposes of Federal Rule of Evidence 401, and unduly prejudicial, for purposes of Rule 403. The government also introduced the evidence showing that both Nelson and Sullivan had initially given false names to the police; Nelson objected to this on the same basis. Both types of evidence, he urged, had nothing to do with his possession of the firearm and accomplished nothing other than to make the jury think that he was a bad person with a propensity to commit crimes. The court overruled those objections. The drug evidence, it said, was admissible to give the jury the full story of what happened—why the officers remained after they found the Hyundai, why they continued to ask questions, how they came to find the gun. The false names, the court said, were admissible to show consciousness of guilt.

During the prosecutor's closing argument, he began discussing the car that Nelson had been driving. In so doing, he referred to the Hyundai as "his [*i.e.* Nelson's] car." Nelson's lawyer promptly objected and said, in the presence of the jury, "it wasn't his car. The evidence was quite clear that that car was not his car." The prosecutor immediately corrected his statement, saying "I can rephrase. The car that he was driving that he was controlling … ." The judge then said to the jury "you heard the evidence. And where there's a dispute, go by your recollection."

The jury convicted Nelson on the gun charge, which was the only one before it, and the court sentenced him to a term of 60 months' imprisonment and three years' supervised release. On appeal, Nelson reiterates his challenges to the drug

and false-name evidence, and he contends that the prosecutor's statement to the effect that the Hyundai was "his" car was so prejudicial that only a new trial can suffice to cure it.

## II

### A

In order to assess Nelson's objection to the evidence relating to the presence of marijuana in the car, we need to back up a step or two. Nelson never moved to suppress this evidence before trial, as he should have done if he wanted to bar its use at trial. See FED. R. CRIM. P. 12(b)(3)(C), identifying a motion to suppress as one that "must" be made before trial. Although it is possible for a party to resurrect the chance to make such a motion if it fails to meet the rule's deadline, it is necessary for the party to convince the court that it had good cause for its omission. See FED. R. CRIM. P. 12(c)(3).

Nelson has not sought to satisfy Rule 12(c)(3), and as far as we can tell from the record, nothing suggests that he could demonstrate good cause for his failure to file a motion to suppress. If the unavailability of suppression automatically means that the evidence could come in without further ado, there would be nothing left for Nelson to discuss. But we are unwilling to read so much into the lack of suppression. It is possible for evidence to be collected in a way that does not violate either the Fourth Amendment or any other law, while at the same time that evidence fails the relevance standard of Federal Rule of Evidence 401, or its probative value is greatly outweighed by its prejudicial impact, as described in Federal Rule of Evidence 403. If that is the defendant's contention, then a motion in limine is the proper procedure to use. Nelson did not use that mechanism either, but we will proceed on the

general understanding that he asserts error under the Rules of Evidence.

As we noted, the district court decided that the drug evidence was admissible to explain to the jury why the officers proceeded as they did. Omitting it, the court reasoned, would "give[] rise to the assertion that the[] [officers] were harassing and behaving improperly." The court added that the evidence was not prejudicial in any event because "there never was a determination made connecting the marijuana to Mr. Nelson." The government defends the court's decision largely on the well-worn ground that the evidence was relevant because its exclusion would leave a "chronological and conceptual void in the story." *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012). It also endorses the district court's finding of no prejudice. With respect to the false-name evidence, the government follows the district court's rationale—that it was relevant to prove consciousness of guilt. Finally, the government asserts that both rulings, even if wrong, were harmless error. See FED. R. CRIM. P. 52(a).

We have expressed concerns before, and we reiterate them now, about overuse of the "complete-the-story" theory of relevance. First, it is in tension with our *en banc* decision in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), in which we carefully laid out the rules for determining when "other crimes" evidence is admissible under Federal Rule of Evidence 404(b), and how Rules 401 and 403 fit into that framework. "Complete the story" was not one of the permissible non-propensity uses we endorsed. See also *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) (holding that a police officer's testimony about the recovery of marijuana from a car in which the defendant in a methamphetamine

dealing case had been a passenger during the course of an extended undercover investigation was not relevant); *Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011) ("[S]tatements offered to show 'background' or 'the course of the investigation' can easily violate a core constitutional right, are easily misused, and are usually no more than minimally relevant."). Second, as *Old Chief v. United States*, 519 U.S. 172 (1997), held, a district court actually abuses its discretion if a defendant offers to stipulate that he had previously been convicted of a felony for purposes of a prosecution under 18 U.S.C. § 922(g), and the court refuses to allow him to do so and admits the full record of the prior judgment. Here, there would have been no "story" to complete, if the defendant had simply stipulated that the police were entitled to search the car and to run the checks on the names they were given.

None of that happened, however. The problem with the idea of completing the story of the investigation is that the evidence about which Nelson is complaining had nothing to do with the gun-possession crime for which he was charged. But we need not wrestle with this problem much more, because we agree with the government that any error that occurred in the admission of the drug evidence and the false-name evidence was harmless. Nelson's DNA was found on the trigger of the gun, the gun was within reach of the driver, and he was the driver. This is powerful evidence supporting his conviction. He was able to extract from the DNA analyst the admission that secondary transfer of DNA is possible, and he also put before the jury his theory of how that might have happened. (His story was that he and Baring had sex in the car before they picked up Sullivan; he wiped himself off after the act using the sweatshirt; and the sweatshirt later covered the gun. The jury was entitled to reject this as a possible way in

which his DNA made its way to the trigger of the gun.) And, with respect to the false names, no one dwelt on that point, and Nelson and Baring quickly admitted their lies. We thus find no ground for reversing Nelson's conviction based on these evidentiary rulings.

B

We can be brief with Nelson's contention that a misstatement by the prosecutor during closing argument warrants a new trial. The misstatement related to Nelson's relation to the Hyundai. The prosecutor accidentally said that it was Nelson's car (implying ownership), whereas it was not—Nelson was just the driver. When challenged, the prosecutor corrected the mistake instantly, and the court gave the standard instruction to the jury that it was to rely on its own recollection of the evidence.

In order to prevail on this claim, Nelson must show that this remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Klemis*, 859 F.3d 436, 442 (7th Cir. 2017) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). We have identified five points that assist in making that ultimate determination: "(1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction." *United States v. Adams*, 628 F.3d 407, 418–19 (7th Cir. 2010).

None of these points helps Nelson. Despite his effort to blow up the prosecutor's blunder into something momentous, it was not. We cannot imagine the jury's weighing the evidence differently depending on whether Nelson held the title to the car or was just the driver. The comment was not invited; the court's instruction ameliorated its impact (even though the court did not, as Nelson would have liked, just tell the jury that Nelson was not the owner); Nelson had, and took, the opportunity to correct it; and the evidence against him was strong. The prosecutor's misstatement came nowhere near an error of such gravity that it deprived Nelson of a fair trial.

## III

Neither the court's evidentiary rulings nor its handling of the prosecutor's momentary lapse during closing argument amounted to reversible error. We thus AFFIRM the judgment of the district court.