Flaum, Circuit Judge.
The government alleges Daniel Ballard fraudulently obtained construction loans from a bank. After Ballard was convicted on three counts of bank fraud, his attorney obtained a previously undisclosed audio recording of an adverse witness in Ballard's trial, made during the course of a prior, unrelated criminal investigation. Ballard moved for a new trial as a result of this newly discovered evidence. The district court found certain portions of the recording favorable and material to Ballard's defense and granted him a new trial. The United States appeals. We affirm.
I. Background
Ballard's alleged fraudulent scheme was as follows: Ballard obtained a $280,000 construction loan from the State Bank of Herscher ("SBH") to construct a residence at 3013 Stone Fence Drive in Kankakee, Illinois ("the Stone Fence Property"). After some time, he realized he was "in over his head" and requested an additional $90,000 loan to finish the property. As there was insufficient equity to cover the requested amount, SBH only lent him $20,000. To make up the balance, Ballard sought and obtained construction loans on two other properties in Bradley, Illinois: 411 North Center and 248 North Center ("the North Center Properties"). Joseph Grant was the SBH loan officer for all three properties.
To obtain funds under the loans, Ballard was required to submit Sworn Contractor's Statements and Owner's Payment Authorizations to the Kankakee County Title Company ("KCTC"). On the forms, Ballard identified the material and labor costs supposedly associated with his work on the North Center Properties. KCTC forwarded the forms to SBH, which then released funds back to KCTC to disburse to Ballard.
*503 In total, Ballard obtained approximately $188,000 for the North Center Properties. In reality, however, no work was actually performed; instead, Ballard used the funds to complete construction on the Stone Fence Property. On March 21, 2012, an SBH employee discovered Ballard's scheme. When confronted by Charles Riker, the president of SBH, Ballard allegedly acknowledged that he had misrepresented his work on the North Center Properties.
On June 2, 2015, Ballard was charged with three counts of bank fraud in violation of 18 U.S.C. § 1344. At trial, Ballard admitted that he had misdirected funds allocated for the North Center Properties to the Stone Fence Property. However, he maintained two separate legal defenses. The first was a "good faith" defense-Ballard asserted that Grant and his supervisors not only knew, but authorized Ballard's acts and pressured him to complete the Stone Fence Property. Second, Ballard claimed he did not read or sign the supposedly fraudulent loan documents prior to their submission to KCTC, and implied that someone else forged his signature.[1]
In response, Grant testified that he never told Ballard to use the North Center loan proceeds at the Stone Fence Property or knew that Ballard was doing so. At the conclusion of the trial, a jury convicted Ballard of all three counts.
On February 8, 2017, Ballard filed a motion for a new trial. Ballard's motion centered on a surreptitious audio recording of Grant made during a prior, unrelated federal investigation centering on Scott Fitts ("the Fitts investigation"). Notably, Lawrence Beaumont-Ballard's attorney here-represented Fitts during those criminal proceedings. In 2007, Fitts obtained a personal loan from SBH, with Grant serving as his loan officer. Fitts later pleaded guilty to at least one criminal violation related to the loan. Fitts signed a cooperation agreement as part of his plea, and was later directed to audio record a conversation with Grant. In that approximately one-hour recording, Fitts and Grant discussed various matters relating to Fitts's alleged misconduct and Grant and SBH's involvement.
Ballard alleged that the day after the jury verdict was announced, Fitts called Beaumont and told him about the Grant recording. Based on the contents of the recording, Ballard moved for a new trial, arguing that the government had improperly suppressed evidence capable of impeaching Grant's credibility. The district court agreed, vacated Ballard's conviction, and ordered a new trial. According to the district court, Ballard's defense that he did not read the loan documents "may have been a much more plausible defense had *504 the Government turned over the Grant recording prior to trial." This appeal followed.
II. Discussion
Under Brady v. Maryland , a defendant can obtain a new trial if he shows that evidence suppressed by the government was favorable and material to either his guilt or punishment. See 373 U.S. 83, 88-89, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ; see also United States v. Veras , 51 F.3d 1365, 1374 (7th Cir. 1995).[2] Whether evidence is favorable and material "is legally simple but factually complex." Turner v. United States , --- U.S. ----, 137 S.Ct. 1885, 1893, 198 L.Ed.2d 443 (2017). Indeed, "[w]e must examine the trial record, 'evaluat[e]' the withheld evidence 'in the context of the entire record,' and determine in light of that examination whether 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.' " Id. (second alteration in original) (first quoting United States v. Agurs , 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ; then quoting Cone v. Bell , 556 U.S. 449, 470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) ).
Generally, we review a grant or denial of a motion for a new trial under an abuse of discretion standard. United States v. Lawson , 810 F.3d 1032, 1042 (7th Cir. 2016). Brady violations often implicate both issues of fact and law; we review the district court's factual findings for clear error, and legal conclusions de novo. United States v. Griffin , 652 F.3d 793, 797 (7th Cir. 2011) ; see also United States v. Freeman , 650 F.3d 673, 678-79 (7th Cir. 2011) ("The district court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact."); United States v. Wolf , 860 F.3d 175, 189 (4th Cir. 2017) ("With regard to the district court's Brady ruling, we apply de novo review to its legal determinations and clear error review to its factual findings.").
A. Favorability
Evidence is favorable "either because it is exculpatory, or because it is impeaching." Turner , 137 S.Ct. at 1893 (quoting Strickler v. Greene , 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ). Evidence need only have "some weight" or "tendency" to be favorable to the defendant. Kyles v. Whitley , 514 U.S. 419, 451, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
The district court found the Grant recording supported four reasonable inferences: (1) Grant disclosed to Fitts that a Suspicious Activity Report ("SAR") had been created for one of his transactions[3] ; (2) SBH filled out the SAR related to Fitts's loan with false information; (3) Grant accepted signed, blank loan applications from Fitts; and (4) Grant believed he was under criminal investigation. The government contends that these factual findings are not supported by the record. We disagree. "Under [the clear error] standard, we will not reverse unless, after reviewing *505 all the evidence, we are left with 'the definite and firm conviction that a mistake has been committed.' " Buechel v. United States , 746 F.3d 753, 756 (7th Cir. 2014) (quoting Anderson v. City of Bessemer City, N.C. , 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ). Upon a thorough review of the record, including the Grant recording, we have no such conviction here. The district court's four conclusions "are 'plausible in light of the record viewed in its entirety.' " Id. (quoting Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc. , 293 F.3d 1023, 1028 (7th Cir. 2002) ). Thus, we will not disturb them.
Based upon these factual findings, the district court made a legal determination that the Grant recording provided "ample fodder for impeaching Grant's credibility." Once again, we cannot say that such a finding was in error. For one, some of the acts arguably admitted by Grant in the recording-such as falsifying a SAR and accepting signed, blank loan applications-are probative to attacking his character for truthfulness. See Fed. R. Evid. 608(b)(1). Additionally, the recording supports an inference that Grant not only admitted to illegal activity, but also thought he was being criminally investigated for his misconduct. Because Grant was never prosecuted, it can be further inferred that Grant received some benefit from the government. Thus, Grant was arguably biased in favor of the prosecution, especially given that many of the main characters in the Fitts investigation took part in the Ballard investigation-most notably the prosecutor, investigating agent, and Grant. If believed, such a motive would damage Grant's credibility as a witness against Ballard. That's because, at trial, Grant's testimony directly contradicted Ballard's statement as to whether Grant and SBH sanctioned Ballard's conduct. If a jury did not believe Grant's testimony, it might have found Ballard generally more credible. This may have made Ballard's defense that he did not read the loan statements more believable.
B. Materiality
We must next address whether the favorable evidence is material. A statement is material if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone , 556 U.S. at 470, 129 S.Ct. 1769. In order to have "[a] 'reasonable probability' of a different result," the suppressed evidence must "undermine[ ] confidence in the outcome of the trial." Turner , 137 S.Ct. at 1893 (quoting Kyles , 514 U.S. at 434, 115 S.Ct. 1555 ).
As the district court reasoned, "[t]he Defense was entitled to cross-examine Grant about his credibility, and had the jury found Grant incredible, it is not a stretch to see the verdict could have been different." The dissent correctly notes that twelve other witnesses testified at trial. And it is true that it is "the rare case in which impeaching evidence warrants a new trial, because ordinarily such evidence will cast doubt at most on the testimony of only one of the witnesses." United States v. Taglia , 922 F.2d 413, 415 (7th Cir. 1991). However, as we continued in Taglia , "[that] practice should not be taken to imply ... the district judge is helpless to grant a new trial. District judges do not in fact consider themselves helpless in such circumstances, and they are right not to." Id. 415-16. Indeed, a trial judge is best equipped to "develop[ ] a feel for the impact of the witnesses on the jury-and how that impact might have been different had the government played by the rules" and disclosed the suppressed evidence. United States v. Boyd , 55 F.3d 239, 242 (7th Cir. 1995). We, "confined to reading the transcript, cannot duplicate" such a nuanced *506 sense on appeal. Id. Thus, "unless we are convinced that [the trial judge in fact] was mistaken"-and we are not convinced here-"we have no warrant to reverse." Id.
III. Conclusion
For the foregoing reasons, we AFFIRM the judgment of the district court.

The government sought to exclude Ballard's good faith defense, arguing that "[t]he law is pretty clear that a loan officer is not the bank. So that if a loan officer was somehow ... complicit in the bank fraud, the victim is still the bank. It wouldn't be a defense for the defendant." That may be true. See United States v. Allender , 62 F.3d 909, 915-916 (7th Cir. 1995). However, the district court denied the government's motion, noting that Ballard's theory was not limited solely to Grant but also included his superiors at SBH. The court stated:
[A]t some point the bank is its people, right? If everybody in the bank-let's just go crazy here-if everybody in the bank tells Beaumont's client, you go ahead, you can do this, then you can't come back later and argue that the bank is this building and not the people, right?
Thus, the district court allowed Ballard to "explore whether this goes up past Mr. Grant under his theory." The government continues to maintain that the good faith defense is precluded. Since we find the recording is favorable and material to Ballard's defense that he did not read the loan statements, we need not address whether the good faith defense is plausible here.

On appeal, the government does not contest that the Grant recording was suppressed; thus, we need not further analyze that factor.

A SAR is a report made by a financial institution about suspicious, or potentially suspicious activity, to prevent fraud, money laundering, and other nefarious activities. In the United States, financial institutions and their employees can face civil and criminal penalties for failing to properly file a SAR or for failing to file them within 30 calendar days of detection of behavior that might constitute the basis for their filing. See generally 31 U.S.C. §§ 5311 -32. Disclosure of the existence of a SAR is prohibited. 31 U.S.C. § 5318(g)(2).