In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 20-2736

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHAWAN LOWE,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 CR 548 — **Elaine E. Bucklo**, *Judge.*

───────────────

ARGUED MAY 27, 2021 — DECIDED JUNE 22, 2021

───────────────

Before KANNE, SCUDDER, and KIRSCH, *Circuit Judges.*

KANNE, *Circuit Judge.* Chawan Lowe was found guilty of illegally possessing a firearm. He appeals his conviction and sentence on the grounds that the district court (1) admitted inadmissible "other-act evidence" at trial and (2) mishandled its response when a juror gave an "equivocal" answer about his individual verdict in jury polling. But the evidence in question was not inadmissible, the juror's answer was not

equivocal, and the court acted appropriately in all respects. We therefore affirm the conviction and sentence.

## I. BACKGROUND

In the early evening of May 22, 2019, Chicago police officers responded to a call of shots fired near a residence on South Sangamon Street. The officers immediately canvassed the area for a suspect and, only a couple minutes after the shots were fired, came upon a man running in an alley. They stopped the man, later identified as Defendant Chawan Lowe, and asked why he was running. Lowe said he was looking for his dog. The officers drove on.

Fifteen seconds later, the same officers bumped into Lowe again on an adjacent street. Lowe repeated that he was looking for his dog. He also lifted his shirt and said, "I don't have anything." Although he did not have a firearm, he also did not have a leash or anything else to indicate that he was looking for a dog. The officers detained him.

Several officers then searched the area. In the alley Lowe had just traversed, the officers noticed a partially opened dumpster. Inside they found a pistol lying on top of the garbage. Ballistics later revealed that the handgun, a 9mm Ruger, was the same gun that fired the shots near the South Sangamon residence. No physical or biological evidence—fingerprints, DNA, gunshot residue, or the like—conclusively linked Lowe to the gun found in the dumpster or to cartridge casings or fired bullets found at the scene of the shooting.

The police recovered security video footage from the alley, which showed someone running from the South Sangamon residence and, moments later, throwing an unidentified (but suspiciously gun-shaped) object into the dumpster:



The person in the video was wearing the same clothes, carrying the same backpack, and bearing the same tattoo as Lowe when he was detained.

Lowe was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Before trial, he moved to exclude any evidence that gunshots were fired shortly before the officers recovered the gun. The district court denied the motion.

At trial in March 2020, the only issue was whether Lowe possessed the handgun. In addition to the other evidence discussed above, officers testified that they "were responding to a call of shots fired" and "process[ing] a scene of an aggravated battery with a handgun" when they encountered Lowe and discovered the pistol in the dumpster and the casings and bullets at the South Sangamon residence. The government also offered expert testimony to establish that the gun found in the dumpster had fired those bullets. The court instructed the jury that such evidence could be considered in

determining whether Lowe knowingly possessed the firearm and whether it was operable, but not "for any other purpose."

The jury returned a verdict of guilty. Lowe's attorney then asked the court to conduct a jury poll, and the court asked each juror whether the verdict "constitute[s] your individual verdict in all respects." The first ten jurors answered, "Yes, your Honor" or "Yes, it does." Juror Eleven, though, gave the answer, "Yes. Barely." The court responded, "You said yes?" to which Juror Eleven replied, "Yes, ma'am." After proceeding to the last juror, the court instructed the clerk to enter the verdict as rendered.

Lowe's attorney moved for a mistrial because Juror Eleven said "barely" and the jury therefore "didn't come to a unanimous verdict." He also asked for Juror Eleven to be questioned "outside the presence of the other jurors to see why he came to a verdict."

The court denied Lowe's requests, indicating that Juror Eleven "answered yes the second time, if there was any qualification at all on the first. And, really, there wasn't. It was, I suppose, an editorial comment. But, regardless, when I asked him, he said, yes."

Later, the court affirmed its position in a written opinion: "Juror [Eleven], who was a lawyer, did not indicate disagreement with the verdict; he simply indicated that he found the government's evidence to be minimally sufficient to carry its burden."

Lowe was sentenced to ninety months' imprisonment. He now appeals.

## II. ANALYSIS

Lowe argues that the district court erred in two ways. He first contends that, under Federal Rule of Evidence 404(b), the court should have excluded "other-act evidence" that gunshots were fired shortly before he was detained. Second, he argues that the court should have declared a mistrial or required further deliberations, as required by Federal Rule of Criminal Procedure 31(d), when Juror Eleven gave an "equivocal" answer to the jury poll.

### A. Admissibility of Evidence

We review a district court's decision to admit or exclude evidence for an abuse of discretion. *See United States v. Thomas*, 933 F.3d 685, 690 (7th Cir. 2019) (citing *United States v. Quiroz*, 874 F.3d 562, 569 (7th Cir. 2017); *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010)).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The same rule also provides, however, that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).

Of course, "Rule 404(b)(2)'s list is 'not exhaustive.'" *United States v. Torres-Chavez*, 744 F.3d 988, 991 (7th Cir. 2014) (quoting *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008)). For example, we have held that evidence of a defendant's involvement in "a home invasion and shooting earlier that night" can be admissible to prove that the defendant

unlawfully possessed a firearm later that night. *United States v. Canady*, 578 F.3d 665, 677 (7th Cir. 2009).

On the other hand, "[w]e have expressed concerns before" about using other-act evidence merely to "[c]omplete the story," for that is "not one of the permissible non-propensity uses we [have] endorsed." *United States v. Nelson*, 958 F.3d 667, 670 (7th Cir. 2020); *see also Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011) ("[S]tatements offered to show 'background' or 'the course of the investigation' … are usually no more than minimally relevant.").

In short, while "complete-the-story evidence" is suspect, relevant other-act evidence generally may be admitted under Rule 404(b) "when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (citing, among other cases, *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013)). "This is not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id.*

Lowe argues that the officers' testimony about why they were in the area—"responding to a call of shots fired" and "process[ing] a scene of an aggravated battery with a handgun"—should have been excluded under Rule 404(b). Specifically, he contends that this testimony was other-act evidence introduced merely to "complete the story" and to support an improper propensity inference.[*]

---

[*] The government initially disputes that Rule 404(b) applies to this case at all. It argues that the evidence at issue is "direct evidence" of the

We disagree. The challenged testimony was admitted neither to "complete the story" nor "to show [Lowe's] propensity to commit a crime." *United States v. Richards*, 719 F.3d 746, 758 (7th Cir. 2013). Rather, as in *Canady*, it was introduced for "another purpose"—proving Lowe's possession of the gun.

To begin with, that the gun was fired moments before it was found in a dumpster showed that it had been put there very recently. This, in turn, showed that the possessor of the gun was within a few moments' radius of the dumpster. It also helped to confirm that the gun-shaped object caught on video—just after the shooting and just before Lowe was detained—was, in fact, the gun that was recovered.

All of this put together pointed to Lowe possessing the gun. After all, *he* was found within a close radius of the dumpster, and *he* was caught on video dropping the gun-shaped object into it. Indeed, that was the theory of relevance the government argued at trial: "Now, that firearm wasn't found at [the South Sangamon residence], it was found at the dumpster … . How did it get there? Well, you know how it got there. The individual in the video, the defendant, took it from [the residence] and threw it into the dumpster."

A "chain of reasoning" that may be, but it's plainly one "that supports the non-propensity purpose for admitting the evidence." *Gomez*, 763 F.3d at 856. The challenged testimony

---

crime charged and cites cases explaining that "if the evidence is admitted as direct evidence of the charged offense, Rule 404(b) is not applicable." *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010). Yet we also have cases like *Canady* that involved seemingly "direct evidence" but that analyzed its admissibility under Rule 404(b). 578 F.3d at 671. For purposes of this appeal, we assume that Rule 404(b) is applicable to the testimony about "shots fired" and "an aggravated battery with a handgun."

is therefore not other-act evidence whose "relevance to 'another purpose' is established *only* through the forbidden propensity inference," *id.*, so Rule 404(b) posed no bar to its admission.

In rebuttal, Lowe distinguishes *Canady* and other cases on which the government relies because, unlike here, "the evidence in those cases necessarily established that the defendants were the shooters." But that distinction is of no moment. The point is that an earlier use of the gun in question may be relevant to showing possession so long as the chain of reasoning leading to that conclusion does not require an improper propensity inference. And as explained, evidence that the gun found in the dumpster was recently discharged implicated Lowe as its possessor.

Finally, Lowe turns to Rule 403 and argues that the evidence should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. Again, we disagree. We have already explained how the evidence was highly relevant to the ultimate issue in the case: Lowe's possession of the handgun. And it posed minimal risk of unfair prejudice because the government neither introduced evidence that someone had actually been shot with the gun (which, we note, would have been true) nor argued that Lowe fired the gun.

What's more, the court instructed the jury that the testimony could be considered *only* in determining whether Lowe knowingly possessed the firearm (and whether the gun was operable). This "customized" instruction was sufficient "to reduce the risk of unfair prejudice" that might have attended the testimony. *Gomez*, 763 F.3d at 860 (citing *United States v. Carter*, 695 F.3d 690, 702 (7th. Cir. 2012); Fed. R. Evid. 403).

We therefore conclude that the district court did not abuse its discretion in admitting the testimony that referred to the prior shooting.

*B. Jury Poll*

Federal Rule of Criminal Procedure 31(d) provides that, if a jury poll "reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." The threshold question here is whether Juror Eleven's answers to the jury poll revealed such a lack of unanimity. The district court concluded that they did not.

Lowe and the government agree that we review this issue for an abuse of discretion because "a trial judge is in the best position to weigh the circumstances peculiar to each trial." *United States v. Wrensford*, 866 F.3d 76, 89 (3d Cir. 2017) (quoting *United States v. Fiorilla*, 850 F.2d 172, 176 (3d Cir. 1988)); *see also United States v. Sturman*, 49 F.3d 1275, 1282 (7th Cir. 1995) (reviewing "the manner in which the jury was polled" for an abuse of discretion). Likewise, we review a district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Williams*, 819 F.3d 1026, 1031 (7th Cir. 2016).

There is limited case law on what exactly "reveals a lack of unanimity," Fed. R. Crim. P. 31(d), but the parties have identified several exemplar cases in which jurors' polling answers did just that:

- I was "[f]orced into" it, "I suppose so," "I don't know how to answer that," and "I feel like I need more time." *United States v. Banks*, 982 F.3d 1098, 1101 (7th Cir. 2020).

- "Yes. With reasonable doubt." *Sincox v. United States*, 571 F.2d 876, 877 (5th Cir. 1978).

- "It's my verdict, but I am still in doubt." *United States v. Edwards*, 469 F.2d 1362, 1366 (5th Cir. 1972).

- "Yes, with a question mark." *United States v. McCoy*, 429 F.2d 739, 741 (D.C. Cir. 1970).

Those cases stand in stark contrast to this case because the answers given by those jurors either directly contradicted the verdict, showed that the verdict was not individually reached, or disclosed lingering uncertainty or doubt. In this case, Juror Eleven's response did none of the above.

Recall that, when asked if the verdict "constitute[s] your individual verdict in all respects," Juror Eleven replied, "Yes. Barely." The first word needs no explanation. The second word indicates only that the stated conclusion was narrowly reached. *See Barely*, Webster's Third New International Dictionary 176 (1986) ("by the narrowest margin"). In common parlance, if the Bears "barely" won the Superbowl, it might have been a close game—but the Bears won the Superbowl.

So "yes" followed by "barely" indicates only that Juror Eleven, a lawyer by profession, felt that the evidence was sufficient to find Lowe guilty beyond a reasonable doubt, even though it was a close call. The addition of the word "barely" did not render his answer—"yes"—ambiguous or uncertain. Juror Eleven's initial answer thus did not "reveal[] a lack of unanimity," Fed. R. Crim. P. 31(d), and the district court could have simply accepted that answer and moved on.

In any event, the experienced district judge—perhaps out of an abundance of caution, perhaps because she simply didn't hear Juror Eleven clearly—asked a follow-up question: "You said yes?" Juror Eleven replied, "Yes, ma'am." So even if there *was* any ambiguity or equivocation in his first answer,

the court did not just "accept[] the verdict without further inquiry or other action," *McCoy*, 429 F.2d at 741; it asked another question, and Juror Eleven's response could not have been clearer.

Lowe responds that, although the district judge was right to make further inquiry, the follow-up question *as phrased* was coercive. He points to the uncontested rule that, "where a poll indicates a lack of unanimity[,] the trial court must refrain from attempting to extract unanimity by questioning from the bench." *Edwards*, 469 F.2d at 1367.

That argument is a nonstarter given that Juror Eleven's first answer did not "indicate[] a lack of unanimity." *Id.* But again assuming that it did, this case is simply nothing like those in which we have found coercion. *See Banks*, 982 F.3d at 1103–05 (finding coercion where judge "continu[ed] to press [the juror] for a different answer," polled the rest of the jury to expose that juror as the only holdout, and only then ordered further deliberations); *Williams*, 819 F.3d at 1033–35 (finding coercion where a lone juror unambiguously rejected the verdict but the court continued to twice poll the remaining jurors and then instructed the jury "to continue with their deliberations until they have reached a unanimous verdict"). In fact, this case pales in comparison even to some in which coercion was *not* found. *See United States v. Hernandez-Garcia*, 901 F.2d 875, 878 (10th Cir. 1990) (finding no coercion where judge asked juror five times whether he agreed with the verdict before he finally gave an unequivocal answer).

In sum, we are not convinced that a juror who unequivocally stated that he agreed with the verdict would feel coerced by a judge asking if he had said he agreed with the verdict. We therefore find no abuse of discretion in the court's

handling of the jury poll or in its denial of Lowe's motion for a mistrial.

### III. CONCLUSION

For the reasons above, we AFFIRM the conviction and sentence.