In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3297

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMIAH D. EDWARDS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 18-cr-162 — **James D. Peterson**, *Chief Judge.*

_____

ARGUED SEPTEMBER 29, 2021 — DECIDED MAY 16, 2022

_____

Before EASTERBROOK, RIPPLE, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* A string of ten armed robberies plagued the Madison, Wisconsin area in the fall of 2018. Law enforcement believed that one man was behind all ten. One of these robberies occurred on the evening of November 4, 2018, when the unidentified suspect, subsequently identified as Jeremiah Edwards, robbed Neil's Liquor in Middleton, Wisconsin. Security camera footage enabled law enforcement officers to obtain a warrant for a GPS tracking device on Edwards's

vehicle, a black Mitsubishi Outlander. After another armed robbery, a high-speed chase, and the seizure of key evidence, the government charged Edwards with Hobbs Act robbery, brandishing a firearm in furtherance of a crime of violence, being a felon in possession of a firearm, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime. A jury found Edwards guilty of all counts. Edwards appeals, claiming a series of errors. We see no error and affirm.

## I. Factual Background

### A. The Robbery of Neil's Liquor

On November 4, 2018, a man—subsequently identified as Edwards—robbed Neil's Liquor in Middleton, Wisconsin. Six security cameras captured Edwards and the robbery.

Edwards parked a black Mitsubishi Outlander on a street behind Neil's Liquor, crossed a wooden footbridge connected to the store's parking lot, and entered the liquor store. Moments later, Edwards robbed Neil's Liquor at gunpoint then escaped out the back door. Edwards left the scene on foot, leaving the parked Outlander behind.

Two hours later, a white SUV parked in Neil's Liquor's lot. A man (presumably Edwards), a woman, and a dog exited the SUV and walked onto the wooden footbridge. The pair then split up, with the man driving off in the Outlander and the woman and dog returning to the white SUV.

Detective Schultz of the Middleton Police Department learned the Outlander was registered to Edwards's ex-girlfriend, who told Detective Schultz that she sold Edwards the Outlander in 2016. Based on the security camera footage of the robbery, Detective Schultz's observations, and the

statements from Neil's Liquor's cashier and Edwards's ex-girlfriend, Detective Schultz prepared a warrant application to place a GPS tracking device on the Outlander. The supporting affidavit included Edwards's criminal history, which Detective Schultz described as "lengthy … including but not limited to arrests for" six robberies between 1998 and 2005. Edwards in fact had fifteen arrests and five convictions. A judge issued the warrant, and on November 7, 2018, law enforcement officers placed the GPS tracking device on Edwards's Outlander.

**B. The Robbery of O'Reilly Auto Parts**

On November 8, 2018, Edwards and co-defendant Kenasha Woods robbed the O'Reilly Auto Parts in Madison, Wisconsin. Woods met Edwards, who she knew as "Moe," through the Moorish Science Temple in Madison. The night of the O'Reilly Auto Parts robbery Edwards offered Woods a ride home after service at the Temple. Edwards and Woods smoked marijuana as they drove. At some point, Edwards pulled a handgun on Woods and ordered her to help him with a robbery. Armed with handguns, they robbed O'Reilly Auto Parts and left the scene in the Outlander.

Law enforcement responded to the robbery and located the Outlander using the GPS tracking device. Edwards and Woods fled, leading the officers on a high-speed chase. When the officers finally caught up to the Outlander, they discovered it crashed and empty. The officers located Woods nearby and brought her to the police station for questioning. Edwards was nowhere to be found.

At the station, officers escorted Woods into an interview room, where Detective Johnson of the Madison Police

Department questioned her. Woods initially told a fabricated story. Detective Johnson then opened a binder on the table and momentarily displayed Edwards's booking photo from a previous arrest. Woods saw the photo, but neither Woods nor Detective Johnson mentioned it. Detective Johnson proceeded to explain everything law enforcement knew about "Moe" and the O'Reilly Auto Parts robbery. Woods then positively identified "Moe" as the man in the booking photo and claimed she could pick "Moe" out of a crowd. Detective Johnson showed her Edwards's booking photo. Woods confirmed it was Edwards and noted that Edwards had hair in the photo, but he was now bald. The government obtained a warrant for Edwards's arrest on November 13, 2018, and on November 28, 2018, a grand jury indicted him.

### C. Search of Edwards's Outlander

On November 9, 2018, the Madison Police Department obtained a search warrant for the Outlander. Officers searched the vehicle and recovered a loaded 9mm handgun, cash, drugs, gloves, a ski mask, and items from Woods's purse. Law enforcement returned the warrant on November 12, 2018, sealed the Outlander with evidence tape, and stored it in an impound facility without conducting a separate inventory search.

In December 2018, Woods was incarcerated and awaiting trial. Edwards was still missing. The night of her arrest, Woods informed officers that her personal handgun was in a pink purse in the back of "Moe's" car. Now, Woods's counsel asked the government for the money in Woods's purse to fund her jail account. Because the purse was not in the inventory of seized property, law enforcement believed it must still be in the Outlander.

On January 1, 2019, Detective Johnson broke the evidence tape sealing the Outlander and entered the vehicle through the front passenger side door to retrieve Woods's purse. Realizing that the purse was in the back seat, he reached over the front seat and inadvertently bumped into the sunglasses holder on the ceiling. The holder dislodged and revealed a hidden compartment. As he attempted to reinsert the holder, Detective Johnson immediately recognized a Glock handgun stashed in the compartment. He left the Outlander and contacted a federal prosecutor, who advised Detective Johnson to get a search warrant, which FBI Agent Boxwell obtained. Law enforcement officers searched the vehicle and found a knit cap and Glock handgun bearing Edwards's fingerprints.

## II. Procedural Background

On March 25, 2019, law enforcement finally apprehended Edwards in Chicago, Illinois. The grand jury subsequently returned a superseding indictment including additional charges.

### A. Motions to Suppress

Edwards filed several suppression motions challenging the evidence linking him to the O'Reilly Auto Parts robbery. First, Edwards sought to suppress evidence resulting from the GPS tracking device. Edwards argued Detective Schultz's affidavit violated *Franks v. Delaware*, 438 U.S. 154 (1978), and did not support probable cause. Second, Edwards moved to suppress Woods's photo identification of him for violating his due process rights. Third, Edwards sought to suppress the Glock recovered from the Outlander, claiming Detective Johnson violated his Fourth Amendment rights when he entered the vehicle without a warrant.

The magistrate judge held a combined *Franks* and evidentiary hearing. During the hearing, the magistrate judge reviewed the security camera footage and heard testimony from Detective Schultz, Detective Johnson, and Woods. The magistrate judge then issued a thorough report and recommendation, concluding that Detective Schultz did not misrepresent the security camera footage or intend to mislead the issuing judge by omitting portions of Edwards's criminal history. Recognizing Detective Johnson's actions may have influenced Woods's photo identification, the magistrate judge found the photo identification reliable after considering the *Biggers* factors. *See Neil v. Biggers*, 409 U.S. 188 (1972). Additionally, the magistrate judge credited Detective Johnson's testimony regarding how he discovered the hidden compartment in the Outlander and concluded the entry did not implicate the Fourth Amendment.

Edwards objected to the magistrate judge's recommendation. On January 21, 2020, the district court entered its opinion and order adopting the report and recommendation, and overruled Edwards's objections. The district court's order questioned Detective Johnson's credibility, suggesting the magistrate judge found Detective Johnson had lied at the evidentiary hearing. The next day, the government moved to reconsider the findings, arguing that the magistrate judge did not find that Detective Johnson lied. Two days later, without waiting for Edwards to file a response, the district court granted the motion and issued a revised opinion and order adopting the report and recommendation. Three days later, Edwards filed his own motion to reconsider, which the district court denied.

## B. Alibi Witness Report

Before trial, Edwards designated Ms. Connie Burrell as an alibi witness. Her story, however, shifted multiple times. Shortly after the robbery, Burrell told Dane County Sheriff's Department officers that she had not seen Edwards in a few weeks. Almost a year later, in September 2019, Burrell told Agent Boxwell the alibi story about recording music with Edwards during the time of the robbery, and emailed time-stamped music files to prove it. But in early 2020, the alibi fell apart.

On January 16, 2020, law enforcement executed a warrant to search Burrell's apartment. During the search, Burrell recanted the alibi and claimed she visited Edwards in jail and he instructed her to "tell them I was with you." On January 17, 2020, Burrell told Agent Boxwell that Edwards threatened her if she would not provide an alibi. Then, on January 18, 2020, she told Agent Boxwell she overheard Edwards on the phone planning the robbery and he came directly to her apartment after crashing the Outlander. On January 19, 2020, Burrell told Agent Boxwell she lied—she never heard Edwards plan a robbery over the phone and he did not instruct her during the jailhouse visit to "tell them I was with you." Then, on February 6, 2020, Burrell told Agent Boxwell she lied on January 19, she manipulated the dates on the music files, Edwards instructed her to say he was with her that night, but she did not overhear Edwards plan a robbery.

Agent Boxwell documented each of Burrell's statements in separate reports. Before trial, the government provided the reports for multiple statements, but not the report containing her January 19 statement. Edwards chose not to call Burrell as an alibi witness. Edwards first learned of the existence—but

not details—of the January 19 statement during a pre-trial hearing. Edwards never followed up with Burrell regarding this statement and did not receive a copy of the report until after trial.

**C. Juror No. 11**

Before trial, the government asked to exclude two case agents, Agent Boxwell and Detective Keith of the Dane County Sheriff's Office, from witness sequestration pursuant to Federal Rule of Evidence 615. Given the multi-jurisdictional nature of this case, the district court granted the motion in part, choosing to sequester Detective Keith until she completed her testimony. Detective Keith testified at trial then sat in the gallery while Detective Johnson testified.

Shortly thereafter, Juror No. 11 informed the district court that he believed Detective Keith coached Detective Johnson's testimony by shaking her head and making animated facial gestures. Edwards moved for a mistrial and the district court held an evidentiary hearing outside the jury's presence.

Although the district court was critical of Detective Keith's actions and admonished her for exhibiting unprofessional behavior, the court denied the motion. The district court ruled that Detective Johnson credibly testified he was not influenced by Detective Keith's behavior, there was not significant evidentiary overlap between the testimonies, and Detective Johnson's testimony was consistent with other evidence presented at trial.

After hearing from Juror No. 11, the district court dismissed him for improper bias. It explained, "the jury is special. I have to give both sides a jury that is going to decide the

case based on the evidence, and if I harbor some misgivings about a juror, I have to let that juror go."

**D. Post-Trial Motions and Appeal**

The jury convicted Edwards on all counts. He subsequently moved for a new trial, arguing the government's failure to turn over the January 19, 2020, report of Burrell's statement violated *Brady v. Maryland*, 373 U.S. 83 (1963). Edwards claimed he would have altered his trial strategy and used Burrell as an alibi witness if the government had provided him with the report in a timely manner. The district court denied Edwards's motion, finding no *Brady* violation. The district court thereafter sentenced Edwards to a combined total 180-month term of imprisonment, followed by a three-year term of supervised release. Edwards filed a timely appeal.

### III. Discussion

On appeal, Edwards challenges the district court's rulings on the motions to suppress, its ruling exempting Detective Keith from sequestration after her trial testimony, its rulings regarding Juror No. 11, and its ruling on the *Brady* challenge. We consider, and reject, each argument in turn.

**A. The GPS Tracking Warrant**

Edwards argues that the district court erred when it denied his motion to suppress evidence obtained through the GPS tracking device on the Outlander. He contends that the warrant is unconstitutional because Detective Schultz's affidavit violated *Franks v. Delaware* and failed to establish probable cause. Edwards does not argue that the affidavit, absent *Franks* relief, would be facially insufficient to support probable cause.

Placing a GPS tracking device on a vehicle is a Fourth Amendment search, requiring law enforcement to show probable cause and obtain a warrant beforehand. *See United States v. Jones*, 565 U.S. 400, 404 (2012). Where the affidavit is the only evidence supporting probable cause, the issuing court focuses "solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003). Under *Franks*, the district court must suppress evidence seized during a search "when the defendant shows by a preponderance of the evidence that (1) the affidavit in support of the warrant contains false statements or misleading omissions, (2) the false statements or omissions were made deliberately or with reckless disregard for the truth, and (3) probable cause would not have existed without the false statements and/or omissions." *United States v. Williams*, 718 F.3d 644, 647–48 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 155–56).

"An affiant acts with reckless disregard for the truth when he 'in fact entertain[s] serious doubts as to the truth of his allegations.'" *Id.* at 650 (quoting *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008)). The inquiry is subjective, focusing on the affiant's state of mind. *Id.* Reckless disregard is greater than negligence. *Id.* "[O]ur task is to determine whether, based on the totality of the circumstances, it was reasonable for the [lower] court to conclude that law enforcement did not doubt the truth of the affidavit." *Id.* A *Franks* violation predicated on an omission requires that it was done "deliberately or recklessly *to mislead* the issuing [judge]." *Id.* (citing *United States v. McMurtrey*, 704 F.3d 502, 513 (7th Cir. 2013)).

We review factual determinations, including whether the officer made statements deliberately or with reckless disregard for the truth, for clear error. *Id.* at 649 (citing *United States*

*v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012)). "A factual finding is clearly erroneous only if, after considering all of the evidence, we cannot avoid or ignore a definite and firm conviction that a mistake has been made." *United States v. Hammond*, 996 F.3d 374, 383 (7th Cir. 2021) (quoting *United States v. Thurman*, 889 F.3d 356, 363 (7th Cir. 2018)).

We see no error in the district court's denial of Edwards's motion to suppress the evidence obtained from the GPS tracking device because Edwards has failed to identify a false statement or misleading omission in the supporting affidavit. The Neil's Liquor security camera footage supports the description in Detective Schultz's affidavit and corroborates his representations to the issuing judge. Our own review of the tape supports the district court's conclusions, and its findings are not clearly erroneous. Additionally, the affiant's underreporting of Edwards's criminal history does not render the warrant constitutionally deficient. If anything, the underreporting benefited Edwards.

Furthermore, even if the explanation of Edwards's criminal history was misleading, Edwards fails to establish that Detective Schultz deliberately or recklessly attempted to mislead the issuing judge. The magistrate judge credited Detective Schultz's testimony that he had no intention to mislead. We defer to the magistrate judge who "had the opportunity to listen to testimony and observe the demeanor of a witness at the suppression hearing." *Thurman*, 889 F.3d at 366 (quoting *United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007)). Because Edwards cannot identify any evidence that the magistrate judge's credibility finding was clearly erroneous, the district court did not err when it denied the motion to suppress evidence from the GPS tracking device.

### B. Woods's Photo Identification

Edwards next argues that the district court erred when it denied his motion to suppress Woods's photo identification. A photo identification procedure violates a defendant's due process rights when (1) it was "impermissibly suggestive" and (2) "under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *United States v. Gonzalez*, 863 F.3d 576, 584 (7th Cir. 2017) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)). We review de novo the lower court's decision to deny a defendant's motion to suppress a photo identification, "with due deference to the court's findings of historical fact." *Id.* (citing *United States v. Harris*, 281 F.3d 667, 669–70 (7th Cir. 2002)).

Presenting a witness with only one suspect for an identification is inherently suggestive but may be permissible in certain circumstances. *Id.* at 584–85 (showing state identification photos within minutes of robbery would be suggestive lacking exigent circumstances); *United States v. Brown*, 471 F.3d 802, 804 (7th Cir. 2006) (reviewing Supreme Court precedent and scholarship regarding single-suspect presentations and attempts to mitigate suggestibility); *but see United States v. Vines*, 9 F.4th 500, 506–07 (7th Cir. 2021) (holding that it was not suggestive to show a Facebook profile picture after witness volunteered the suspect had a Facebook page). Because the government does not dispute the finding that the photo procedure was impermissibly suggestive, we proceed straight to the second prong.

An impermissibly suggestive photo identification may nonetheless survive a suppression motion where the totality of the circumstances demonstrates the reliability of the identification. *See Gonzalez*, 863 F.3d at 585–86 (citing *Perry v. New*

*Hampshire*, 565 U.S. 228, 232 (2012)). In assessing reliability, we consider the *Biggers* factors: (1) the witness's opportunity to view the defendant during the crime; (2) the witness's degree of attention paid to the defendant; (3) the accuracy of any prior descriptions of the defendant; (4) the level of the witness's certainty at the time of the identification; and (5) the time that has passed between the crime and the identification. *Biggers*, 409 U.S. at 199–200; *Gonzalez*, 863 F.3d at 586.

All five *Biggers* factors support the reliability of the photo identification and indicate the process did not give rise to a substantial likelihood of irreparable misidentification. First, Woods knew Edwards and spent hours with him that night. Second, Woods paid significant attention to Edwards over this period as he drove her, pulled a gun on her, committed a robbery with her, and fled from the police with her in a high-speed car chase. Third, Woods correctly observed that, while Edwards had hair in the booking photo Detective Johnson showed her, he was currently bald. Fourth, Woods immediately recognized "Moe" in the booking photo and has not wavered in her identification. Fifth, Woods identified Edwards within hours of the robbery.

Additionally, Edwards argues that Woods's identification was unreliable because she was intoxicated and under great stress. The magistrate judge heard live testimony from Woods and Detective Johnson, and was in the best position to evaluate Woods's credibility and how Detective Johnson's actions may have impacted her photo identification. *See Thurman*, 889 F.3d at 366. Edwards fails to present evidence sufficient to challenge these findings. The district court did not err when it denied Edwards's motion to suppress Woods's photo identification.

**C. Detective Johnson's Second Entry into the Outlander**

Edwards next argues the district court erred when it denied his motion to suppress evidence obtained from Detective Johnson's January 1, 2019, warrantless entry into the impounded Outlander. When reviewing the district court's denial of a motion to suppress, we review findings of fact for clear error and legal conclusions de novo. *See United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc).

Edwards considers Detective Johnson's account of the January 2019 entry incredible, but points to nothing beyond those plausibility concerns rejected below. Here, again, the magistrate judge enjoyed the benefit of observing Detective Johnson's live testimony and evaluating his credibility. Nothing on the record leaves us with the definite and firm conviction the lower court erred in crediting Detective Johnson's version of events. *See Hammond*, 996 F.3d at 383. We decline to disturb the district court's factual findings and accept Detective Johnson's account: Detective Johnson entered the Outlander for the sole purpose of retrieving Woods's purse. Once in the Outlander, he did not stray beyond this objective. In reaching for the purse, Detective Johnson inadvertently dislodged the sunglasses holder and revealed a hidden compartment concealing what he immediately recognized to be a Glock handgun.

Edwards argues that law enforcement needed to obtain a new warrant before searching the impounded Outlander a second time. *See United States v. Keszthelyi*, 308 F.3d 557, 568 (6th Cir. 2002) (articulating the "reasonable continuation rule" that the government needs a new warrant if the second entry is not a reasonable continuation of the first); *Bills v. Aseltine*, 958 F.2d 697, 703 (6th Cir. 1992) (differentiating between entry

for the purposes outlined in the warrant and entry for a different purpose). Edwards suggests that after the officers returned the initial search warrant, he had a legitimate expectation of privacy against further searches without a new warrant or identifiable exception to the warrant requirement. The record indicates the government assumed the same—a prosecutor instructed Detective Johnson to seek a warrant before recovering new evidence. Today, we need not consider when an additional warrant was necessary because Edwards had no privacy interest in the Outlander after he abandoned the vehicle.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. This protects a defendant from unreasonable searches in places where the defendant has a legitimate expectation of privacy. *See Hammond*, 996 F.3d at 384 (citing *United States v. Sawyer*, 929 F.3d 497, 499 (7th Cir. 2019). The Amendment does not apply to abandoned property. *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)). "[N]o person can have a reasonable expectation of privacy in an item that he has abandoned." *Id.* at 456 (quoting *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000)).

Abandonment turns upon an objective test of "the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search." *Id.* (citing *Basinski*, 226 F.3d at 836). We have stated on multiple occasions that a driver relinquishes any privacy interest when he flees a vehicle. *See United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir.

2011) (questioning how a defendant "could argue with a straight face that he maintained an expectation of privacy in [the vehicle] after he ditched it and bolted off on the run"); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (noting that when a driver flees from police, that "is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it").

After the government declined to challenge Edwards's privacy interest, the magistrate judge sua sponte raised abandonment in its report and recommendation. The magistrate judge explained that, but for the government's concession, it would have found Edwards abandoned the Outlander. We agree. Edwards ditched the Outlander (which was not registered in his name) after a high-speed car chase the night of the O'Reilly Auto Parts robbery when he fled on foot, and he was a fugitive at the time Detective Johnson entered the vehicle. A reasonable person would conclude that Edwards abandoned the vehicle. *See Pitts*, 322 F.3d at 455–56.

Although both parties assumed Edwards had a Fourth Amendment right to privacy in the Outlander, we are not bound by the parties' view. Likewise, we may affirm the district court's decision on "'any ground supported by the record.'" *United States v. Harden*, 893 F.3d 434, 451 (7th Cir. 2018) (quoting *Boyd v. Ill. State Police*, 384 F.3d 888, 897 (7th Cir. 2004)). The government's failure to raise abandonment forfeits that issue on appeal. *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 731-35 (1993)); *see United States v. Rahman*, 805 F.3d 822, 831 (7th Cir. 2015) (determining forfeiture when "the argument was available to [the defendant] at the time of the

search"); *United States v. Combs*, 657 F.3d 565, 571 (7th Cir. 2011) (explaining that "[t]he government can forego a defense—whether by design or neglect—but we are not obligated to accept the government's waiver"). But we may "base our decision on a forfeited ground" when the record presents "an 'exceptional case.'" *See Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012) (quoting *Wood v. Milyard*, 566 U.S. 463, 473 (2012)).

As our sister circuit recently articulated, "courts do have the ability to 'resurrect' forfeited issues *sua sponte* in 'extraordinary circumstances.'" *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (quoting *Wood*, 566 U.S. at 471 n.5). "The degree to which we adhere to the prudential practice of forfeiture and the conditions under which we will excuse it are up to us as an appellate court." *Id.* at 873 (citation omitted). The court considered the forfeited issue because it had "all the findings of fact necessary … and that purely legal conclusion jumps off the page." *Id.* at 877. We are in similar territory. Under any standard of review, the record shows Edwards abandoned the Outlander. It also qualifies as an exceptional case to forgive the forfeiture.

In *Wood v. Milyard*, the Supreme Court stated that a court may consider a forfeited ground "founded on concerns broader than those of the parties." 566 U.S. at 471 (citing *Granberry v. Greer*, 481 U.S. 129, 133–35 (1987)). A case may be exceptional once "third-party costs are taken into account, [and] reversal may be an excessive sanction for the government's [forfeiture]." *United States v. Ford*, 683 F.3d 761, 769 (7th Cir. 2012) (quoting *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991). "[T]he facts of individual cases" inform when we should use our discretion to decide a case on the forfeited

ground, *Singleton v. Wulff*, 428 U.S. 106, 121 (1976), including when the facts indicate "broader interests are at stake," *Bourgeois v. Watson*, 977 F.3d 620, 632 (7th Cir. 2020).

Based on the facts of this case, it qualifies as exceptional. In failing to challenge Edwards's privacy interest in the Outlander, the government presents alternate reasons for affirmance that would require us to examine unresolved nuances to the Fourth Amendment constitutional doctrine. Yet, the record provides a clear disposition under our established constitutional precedent. As such, we exercise our discretion to forgive the forfeiture and avoid the needless exploration of unchartered constitutional matters which could bring unintended consequences for future litigants.

Presented with the magistrate judge's well-reasoned report, we agree with its recommendation regarding abandonment. Law enforcement was wise to seek a search warrant for the Outlander in the first instance. It is best practice to rely on a warrant instead of gamble on a court's evidentiary determination. But the record here shows Edwards had no expectation of privacy in the abandoned Outlander. Handed a peculiar set of facts, the district court did not err when it denied Edwards's motion to suppress, albeit on different grounds than we affirm on today.

**D. The Government's Motion to Reconsider**

Additionally, Edwards claims the district court erred when it granted the government's motion to reconsider its opinion and order adopting the magistrate judge's report and recommendation. Edwards argues because the government never objected to the report and recommendation, the government waived the issue. We review the district court's ruling

on a motion to reconsider for abuse of discretion. *Jaburek v. Foxx*, 813 F.3d 626, 630 (7th Cir. 2016).

A party may object to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition, or at some other time the court sets." Fed. R. Crim. P. 59(b)(2). Failure to object "waives a party's right to review." *Id.* Waiver is not jurisdictional, however, and a district court may review a recommendation on its own initiative. *United States v. Street*, 917 F.3d 586, 597–98 (7th Cir. 2019). Furthermore, "we have recognized exceptions when enforcing [the deadline] would 'defeat the ends of justice.'" *Id.* at 597–98 (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 540 (7th Cir. 1986)).

Waiver does not apply here. The magistrate judge entered a well-reasoned and unambiguous report and recommendation. Nowhere in the report did the magistrate judge include that Detective Johnson lied or gave false testimony. Instead, the district court erroneously concluded that the magistrate judge had made such a finding, and the government objected to the district court's error. The district court acted well within its discretion in correcting its mistake.

**E. Trial & Juror No. 11**

Edwards next claims the district court made numerous errors at trial: failing to sequester Detective Keith from the court room, denying Edwards's motion for a mistrial, and dismissing Juror No. 11. We review these rulings for abuse of discretion. *See United States v. Olofson*, 563 F.3d 652, 660 (7th Cir. 2009) (witness sequestration exemption); *United States v. Lowe*, 2 F.4th 652, 658 (7th Cir. 2021) (mistrial); *United States v. Lorefice*, 192 F.3d 647, 654 (7th Cir. 1999) (juror dismissal). We

review the district court's factual findings in connection with a mistrial motion for clear error. *See United States v. Mannie*, 509 F.3d 851, 856 (7th Cir. 2007) (citing *Shakman v. City of Chicago*, 426 F.3d 925, 932 (7th Cir. 2005)).

### 1.  Detective Keith

Federal Rule of Evidence 615 directs a court to exclude witnesses from the courtroom during trial so they do not influence, and are not influenced by, the testimony of other witnesses. Rule 615 exempts several categories of witness from exclusion, including a government's investigative case agent. *See* Fed. R. Evid. 615(b) & (c); *United States v. Berry*, 133 F.3d 1020, 1024 (7th Cir. 1998).

The district court did not abuse its discretion by permitting both Agent Boxwell and Detective Keith (after her testimony) in the courtroom. Agent Boxwell was the lead investigator for the case and squarely fell under the Rule 615(b) case agent exemption. Similarly, Detective Keith's presence was essential to the government's case pursuant to Rule 615(c). Detective Keith's role was separate from Agent Boxwell's, the case was multi-jurisdictional, Detective Keith worked for a different law enforcement body, and she had independent knowledge of other aspects of the case. Moreover, the district court sequestered Detective Keith until she had completed her testimony, thereby eliminating the risk that the testimony of other trial witnesses would impact hers.

### 2.  Motion for Mistrial

Edwards argues that the district court erred by denying his motion for a mistrial after Juror No. 11 raised concerns of potential witness coaching. "[A] trial judge is in the best position to weigh the circumstances peculiar to each trial." *Lowe*,

2 F.4th at 658 (quoting *United States v. Wrensford*, 866 F.3d 76, 89 (3d Cir. 2017)). In considering the context of the district court's decision, we must "determine whether the defendant was deprived of a fair trial." *Mannie*, 509 F.3d at 856 (citing *United States v. Clarke*, 227 F.3d 874, 881 (7th Cir. 2000)).

The district court did not abuse its discretion. Though Edwards disagrees with the result, he does not explain how the district court's factual findings were clearly erroneous. Instead, he asks us to reweigh the evidence. The record indicates that the district court took great care to ensure that it did not allow a tainted trial to move forward. It took testimony from Juror No. 11 and the detectives, allowed the parties to question the detectives, and heard arguments from both sides. The district court carefully considered the evidence and the circumstances, recognizing it was in the best position to weigh the situation. It then made clear factual findings that Keith did not coach Johnson, Johnson credibly testified that Keith's behavior did not impact his testimony, and there was no prejudice to warrant a mistrial. It also admonished Detective Keith for her conduct. The district court could not declare a mistrial for witness coaching when no witness coaching took place.

### 3. *Excusing Juror No. 11*

Edwards next argues that the district court abused its discretion when it excused Juror No. 11. A district court may remove and replace sitting jurors "who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). The district court is in the best position to consider a juror's potential bias and weigh that against the juror's claims that he can still be fair and impartial. *See Lorefice*, 192 F.3d at 654. A district court abuses its discretion when "*no legitimate basis* for the court's decision can be found in the

record, and the appellant shows that the juror's dismissal prejudiced his case." *United States v. Pineda*, 743 F.3d 213, 217 (7th Cir. 2014) (citing *United States v. Vega*, 72 F.3d 507, 512 (7th Cir. 1995)).

Edwards challenges the district court's basis for excusing Juror No. 11, claiming that a juror is entitled to consider what takes place in the courtroom. He suggests that Detective Keith's actions in the gallery were fair game for the jury, and the district court abused its discretion when it excused a juror who was merely weighing witness credibility.

The district court took a methodical approach to protect the sanctity of the jury and the fairness of Edwards's trial. It found, after careful consideration, that Detective Keith's actions did not impact Detective Johnson's testimony. After questioning Juror No. 11 twice, however, the district court observed that Juror No. 11 believed Detective Keith may have coached Detective Johnson's testimony. Indeed, Juror No. 11 felt so strongly about the behavior that he voiced his concerns. The district court recognized that Juror No. 11 initially stated he would consider Detective Keith's actions when weighing Detective Johnson's credibility. Despite Juror No. 11's agreement to follow its instructions, the district court believed the cloud of bias remained. Based upon its evaluation of Juror No. 11's demeanor and credibility, the district court concluded that the juror's continued service on the jury risked tainting the trial and deliberations. The district court's detailed finding supports its conclusion. It did not abuse its discretion in excusing Juror No. 11.

**F. Motion for a New Trial**

Next, Edwards appeals the district court's decision to deny his motion for new trial pursuant to Federal Rule of Civil Procedure 33 and *Brady v. Maryland*. We review the district court's decision to grant or deny a motion for new trial for abuse of discretion, including when the defendant alleges there was a *Brady* violation. *United States v. Ballard*, 885 F.3d 500, 504 (7th Cir. 2018). Because "*Brady* violations often implicate both issues of fact and law; we review the district court's factual findings for clear error, and legal conclusions de novo." *Ballard*, 885 F.3d at 504 (citing *United States v. Griffin*, 652 F.3d 793, 797 (7th Cir. 2011)).

"To succeed on a *Brady* claim, a defendant 'bears the burden of proving that the evidence is (1) favorable, (2) suppressed, and (3) material to the defense." *United States v. Walter*, 870 F.3d 622, 629 (7th Cir. 2017) (quoting *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014)). Edwards has failed to satisfy these elements.

*1. Favorable Evidence*

Evidence is "favorable" if it is exculpatory or impeaching. *Ballard*, 885 F.3d at 504 (citing *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017)). The district court noted that Edwards knew of the existence, but not the details, of the January 19 statement. Edwards claims the details in the report are favorable because they reflect Burrell denouncing her prior statements, which were detrimental to Edwards's case. We cannot see how the January 19 report is favorable, particularly when Burrell called Agent Boxwell again on February 6, 2020, to contradict her January 19 statement. If anything, it further undermines Burrell's credibility.

### 2. *Suppression*

Evidence is suppressed when the government "fail[s] to disclose evidence not otherwise available to a reasonably diligent defendant." *Bryant v. Brown*, 873 F.3d 988, 998 (7th Cir. 2017) (quoting *Jardine v. Dittmann*, 658 F.3d 772, 776 (7th Cir. 2011)). Evidence is not suppressed when a defendant is aware a witness recanted a prior statement and the defendant has access to question the witness further. *See United States v. Lockhart*, 956 F.2d 1418 (7th Cir. 1992). Edwards claims that the government suppressed the January 19, 2020, report's contents. Even if he had asked her about the statement, Edwards contends, only the report could verify whether Burrell's recollection of her statement was reliable.

We agree with Edwards that, as a practical matter, the government should have turned over the report. But the nature of this report falls outside the scope of *Brady*. Though the government did not produce the report, anything Edwards would have gained from it was available to him through reasonable diligence because Burrell was his witness. *See Lockhart*, 956 F.2d at 1426 (noting that the government is not required to "transcribe the recantation of a witness available to the defendant"). Edwards points to *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001), arguing that Burrell could not have relayed the exact contents contained in the report. *Boss* does not apply here. In *Boss*, we explained that reasonable diligence does not extend to everything a defense witness might have told the government, such as additional information about the crime unrelated to his alibi testimony. *Boss*, 263 F.3d at 740–42. Conversely, Burrell's statement goes directly to her role as an alibi witness. When Edwards's counsel learned about the January 19, 2020, statement, reasonable diligence required counsel to

follow up with Burrell to determine what she did or did not say. If Burrell recanted her recantation on January 19, she could easily have told Edwards.

### 3. *Materiality*

Evidence is "material" when "there is a 'reasonable probability' that the result would have been different had the suppressed evidence been put before the jury." *Goudy v. Cummings (Goudy II)*, 922 F.3d 834, 842 (7th Cir. 2019) (citing *Kyles v. Whitley*, 514 U.S. 419, 422 (1995)). This standard "is less rigorous than a preponderance of the evidence … [the defendant] must show only that 'the cumulative effect of all of the suppressed information is to undermine confidence in the verdict.'" *Id.* (quoting *Goudy v. Basinger (Goudy I)*, 604 F.3d 394, 399 (7th Cir. 2010)). Cumulative effect is considered "in the context of the entire record." *Id.* (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 507 (7th Cir. 2015)). Edwards argues the report is material because he could have used it to rehabilitate Burrell's alibi testimony had she taken the stand.

Edwards fails to show how the contents of the January 19, 2020 report could possibly rehabilitate Burrell's credibility had she testified, let alone how it would present a reasonable probability that the outcome of his trial would have been different. As the district court correctly observed, the evidence against Edwards was strong. *See United States v. Asher*, 178 F.3d 486 (7th Cir. 1999) (affirming when the suppressed FBI interview summaries would not have undermined confidence in the jury's verdict given the weight of additional evidence). Woods, Edwards's codefendant, testified against him, the two used his Outlander during the O'Reilly Auto Parts robbery, the surveillance video captured him, and his DNA was on the gun Detective Johnson found in the Outlander. Moreover,

Burrell's account of the events was a moving target. She told multiple versions of the events. The report would not have created a reasonable probability of a different outcome in Edwards's case.

**G. Cumulative Error**

Edwards concludes by asking us to reverse on cumulative error. "Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law." *United States v Marchan*, 935 F.3d 540, 549 (7th Cir. 2019) (quoting *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001)). "To establish cumulative error a defendant must show that '(1) at least two errors were committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial.'" *Id.* (quoting *Allen*, 269 F.3d at 847). As explained above, Edwards fails to establish a single error, let alone two.

### IV. Conclusion

For these reasons, we affirm.